
JRS/JRB: USAO 2016R00850



# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND



| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. GJH-18-468** |
| | * | |
| **PETER UNAKALU,** | * | **(Conspiracy to Commit Mail and Wire** |
| a/k/a "Peter Eromosefe Unuakhalu," | * | **Fraud, 18 U.S.C. § 1349; Money** |
| **JANET STURMER,** | * | **Laundering Conspiracy, 18 U.S.C.** |
| a/k/a "Janet Rhame," | * | **§ 1956(h); Wire Fraud, 18 U.S.C.** |
| a/k/a "Janet Burnett," | * | **§ 1343; Mail Fraud, 18 U.S.C. § 1341;** |
| **EUCHARIA NJOKU,** | * | **Aggravated Identity Theft, 18 U.S.C.** |
| a/k/a "U.K.," | * | **§ 1028A; Interstate Transportation of** |
| a/k/a "Ukay," | * | **Stolen Property, 18 U.S.C. § 2314;** |
| a/k/a "Rita," | * | **Money Laundering, 18 U.S.C.** |
| **BRANDON ROSS,** | * | **§ 1956(a)(1)(A)(i) and (B)(i); Aiding** |
| a/k/a "Shaba," | * | **and Abetting, 18 U.S.C. § 2;** |
| a/k/a "Shaba X," | * | **Forfeiture, 18 U.S.C. §§ 981(a)(1)(C)** |
| **SAULINA HELEN EADY,** | * | **and 982(a)(1), 21 U.S.C. § 853(p),** |
| **SAUL EADY,** | * | **28 U.S.C. § 2461(c))** |
| **EUNICE NKONGHO,** | * | |
| a/k/a "Eunice Bisong," and | * | |
| **TROY BARBOUR,** | * | |
| | * | |
| **Defendants** | * | |
| | * | |

\*\*\*\*\*\*\*

## SUPERSEDING INDICTMENT

### COUNT ONE
#### (Conspiracy to Commit Mail and Wire Fraud)

The Grand Jury for the District of Maryland charges that:

At all times relevant to this Superseding Indictment:

### Introduction and Background

1.     The email address "Daniel.Drunz@navy-mil.us" was a registered Yahoo, Inc.,

email address and was not an email address registered on the official United States Navy email

domain.

2.     Victim Company 1 was a company headquartered in the State of Washington that provided wireless voice and data services.

3.     Victim Company 2 was a wholesale audio-video distributor and manufacturer's representative located in the Commonwealth of Virginia.

4.     Victim Company 3 was a cleared United States defense contractor headquartered in the State of Maryland that designed, manufactured, and marketed communications equipment.

5.     United Parcel Service, Inc. ("UPS") and Federal Express Corporation ("FedEx") were American multinational courier delivery services companies that were in the business of providing logistics services, including transportation, distribution, ground freight, ocean freight, customs brokerage, insurance, and financing. UPS was headquartered in Sandy Springs, Georgia. FedEx was headquartered in Memphis, Tennessee.

6.     WhatsApp was an encrypted Internet-based multimedia messaging service used via a smartphone application that functioned using both cellular and wireless data connections.

## The Conspiracy

7.     From a time unknown to the Grand Jury, but beginning at least in or about October 2015, and continuing through at least in or about March 2017, in the District of Maryland and elsewhere, the defendants,

**PETER UNAKALU,**
**a/k/a "Peter Eromosefe Unuakhalu,"**
**JANET STURMER,**
**a/k/a "Janet Rhame,"**
**a/k/a "Janet Burnett,"**
**EUCHARIA NJOKU,**
**a/k/a "U.K.,"**
**a/k/a "Ukay,"**
**a/k/a "Rita,"**
**BRANDON ROSS,**
**a/k/a "Shaba,"**
**a/k/a "Shaba X,"**

2

**SAULINA HELEN EADY,**
**SAUL EADY, and**
**EUNICE NKONGHO,**
**a/k/a "Eunice Bisong,"**

did knowingly and willfully conspire with each other and with others known and unknown to the Grand Jury:

        a.     to commit wire fraud, that is, to devise and intend to devise a scheme and artifice to defraud Victim Company 1, Victim Company 2, and Victim Company 3 (hereinafter, the "Victim Companies"), and for obtaining money and property from the Victim Companies by means of false and fraudulent pretenses, representations, and promises ("the scheme to defraud"), and, for the purpose of executing and attempting to execute the scheme to defraud, to cause to be transmitted by means of wire communication, in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343; and

        b.     to commit mail fraud, that is, to devise and intend to devise a scheme and artifice to defraud the Victim Companies, and for obtaining money and property from the Victim Companies by means of false and fraudulent pretenses, representations, and promises ("the scheme to defraud"), and, for the purpose of executing and attempting to execute the scheme to defraud, to cause to be placed in any post office or authorized depository for mail matter, any matter and thing whatever to be sent or delivered by the Postal Service, and to deposit and cause to be deposited any matter and thing whatever to be sent or delivered by any private or commercial interstate carrier, and to take and receive therefrom, any such matter and thing, and to knowingly cause to be delivered by mail and such carrier according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed.

## Manner and Means of the Conspiracy and Scheme to Defraud

It was part of the conspiracy and scheme to defraud that:

8.   The defendants and their co-conspirators used email addresses, titles, addresses, authentic forms, and other indicia in order to pose as United States government contracting agents.

9.   The defendants and their co-conspirators initiated email contact with the Victim Companies in order to convince those companies that the defendants were authorized to make purchase agreements on behalf of the United States government.

10.   The defendants and their co-conspirators caused the Victim Companies, without prior payment, to ship to the defendants certain merchandise, including specialized communications equipment, cellular telephones, computers, and large screen televisions.

11.   The defendants disguised their participation by using fictitious identities, fictitious business names, and stolen identities of actual persons in order to lease physical facilities where the fraudulently ordered goods were delivered by FedEx and UPS.

12.   The defendants re-sold or otherwise disposed of the fraudulently obtained property to avoid detection and without rendering agreed payment to the Victim Companies, including shipping most received goods to members of the conspiracy located in California via FedEx and UPS or exporting them for sale abroad.

13.   The defendants shared payment among themselves and their co-conspirators in a manner designed to disguise the source of the funds and to promote the objects of the conspiracy.

### Overt Acts

14.   In furtherance of the conspiracy and scheme to defraud, and to effect its objects, the defendants and other conspirators known and unknown to the Grand Jury committed and

4

caused to be committed the following acts, among others, in the District of Maryland and elsewhere:

      a.     In or about December 2015, a member of the conspiracy established the email domain "navy-mil.us" with Yahoo, Inc.

      b.     On a date prior to July 25, 2016, a member of the conspiracy established the email address "Daniel.Drunz@navy-mil.us" for the purpose of communicating with the Victim Companies while holding himself out to be a contracting officer of the United States Navy.

      c.     On or about July 25, 2016, posing as "Daniel Drunz" and using the "Daniel.Drunz@navy-mil.us" email account, a member of the conspiracy sent an email to an employee of Victim Company 3 to begin the process to solicit bids for communications equipment.

      d.     On or about July 26, 2016, posing as "Daniel Drunz" and using the "Daniel.Drunz@navy-mil.us" email account, a member of the conspiracy sent an email to Victim Company 1 to begin the process to solicit bids for tablets and mobile devices.

      e.     On or about September 9, 2016, **JANET STURMER, a/k/a "Janet Rhame," a/k/a "Janet Burnett" ("STURMER")**, rented office space in Frederick, Maryland, using the stolen identity of Individual Victim A, for the purpose of receiving fraudulently obtained goods, namely Apple iPhones and iPads, from Victim Company 1.

      f.     On or about September 12, 2016, **PETER UNAKALU, a/k/a "Peter Eromosefe Unuakhalu" ("UNAKALU")**, and other co-conspirators caused approximately 949 Apple iPhones to be delivered via UPS to the rented office location in Frederick, Maryland.

5

g.      On or about September 13, 2016, **Khalid Razaq, a/k/a "Khalid Mohammed Razaq," a/k/a "Khalid Mohammed Razaq" ("Razaq")**, sent to California via FedEx approximately 19 packages containing iPhones, ten of which were addressed to **Razaq** and nine of which were addressed to **BRANDON ROSS, a/k/a "Shaba," a/k/a "Shaba X" ("ROSS")**.

h.      On or about September 19, 2016, **Razaq** and **ROSS** accepted delivery of nineteen packages containing iPhones from FedEx in California and provided the purloined iPhones to **EUCHARIA NJOKU, a/k/a "U.K.," a/k/a "Ukay," a/k/a "Rita" ("NJOKU")**, for sale.

i.      On or about October 7, 2016, **STURMER** rented office space located in Chantilly, Virginia, for the purpose of receiving fraudulently obtained property from Victim Company 2 and Victim Company 3, using the stolen identity of Individual Victim B and a fraudulent tax return furnished by **Razaq**.

j.      On or about October 28, 2016, **UNAKALU** and other co-conspirators caused Victim Company 3 to deliver approximately $3,200,000 of communications equipment to the rented office location in Chantilly, Virginia.

k.      On or about November 7, 2016, **Razaq** shipped the purloined Victim Company 3 equipment via FedEx to an individual who **ROSS** paid to accept and store the equipment.

l.      On or about November 8, 2016, **UNAKALU** and other co-conspirators caused Victim Company 2 to deliver thousands of flat screen televisions to the rented office location in Chantilly, Virginia.

6

m.     After the delivery on or about November 8, 2016, **Razaq** arranged movement of the televisions to various storage locations that **Razaq** and **STURMER** rented using stolen identities, as well as to their homes.

n.     On or about November 14, 2016, **UNAKALU** directed **EUNICE NKONGHO, a/k/a "Eunice Bisong" ("NKONGHO")**, via WhatsApp to give **Razaq** $5,000, stating, "Hi honey, I need you to send 5k to Khalid [**Razaq**] first thing this morning....we have a lot of product that needs to be shipped immediately and Khalid ran out of money...very important."

o.     On or about November 14, 2016, **NKONGHO** deposited $5,000 into **Razaq**'s account to fund the shipment of stolen flat screen televisions to California.

p.     On or about November 22, 2016, **STURMER** shipped approximately 100 stolen flat screen televisions to **ROSS** in California.

q.     On or about December 12, 2016, **STURMER** sold one stolen flat screen television to a pawn shop in Maryland.

r.     On or about December 20, 2016, **STURMER** shipped 24 stolen flat screen televisions via FedEx from her residence in Virginia to **SAULINA HELEN EADY ("SAULINA EADY")** in California.

s.     On or about December 21, 2016, **STURMER** shipped 26 stolen flat screen televisions via FedEx from her residence in Virginia to **SAULINA EADY** in California.

t.     Between approximately December 28, 2016, and January 30, 2017, **STURMER** and **Razaq**, using the alias "Tristan Olsen," shipped approximately 250 stolen flat screen televisions via FedEx from a storage unit in Virginia to **SAULINA EADY** in California, ostensibly on behalf of the U.S. Department of Veterans Affairs.

7

u.      On or about February 2, 2017, **SAULINA EADY, SAUL EADY**, and **ROSS** accepted delivery of approximately 56 stolen flat screen televisions from a FedEx facility in California and provided the purloined televisions to **NJOKU** for sale.

v.      On or about February 13, 2017, **UNAKALU** directed other members of the conspiracy to ship to Nigeria approximately 617 LG Electronics flat screen televisions distributed by Victim Company 2.

w.      In or around March 2017, **UNAKALU** directed other members of the conspiracy to export to Mexico component items of communications equipment distributed by Victim Company 3.

18 U.S.C. § 1349

## COUNT TWO
### (Money Laundering Conspiracy)

The Grand Jury for the District of Maryland further charges that:

### Introduction and Background

1.     Paragraphs 1 through 6 and 8 through 14 of Count One are incorporated here.

### The Conspiracy

2.     From a time unknown to the Grand Jury, but beginning at least in or about

October 2015, and continuing until at least in or about January 2017, in the District of Maryland

and elsewhere, the defendants,

**PETER UNAKALU,**
**a/k/a "Peter Eromosefe Unuakhalu,"**
**EUCHARIA NJOKU,**
**a/k/a "U.K.,"**
**a/k/a "Ukay,"**
**a/k/a "Rita,"**
**BRANDON ROSS,**
**a/k/a "Shaba,"**
**a/k/a "Shaba X,"**
**SAUL EADY,**
**EUNICE NKONGHO,**
**a/k/a "Eunice Bisong," and**
**TROY BARBOUR,**

did knowingly conspire with each other and other persons known and unknown to the Grand

Jury to conduct and attempt to conduct a financial transaction affecting interstate and foreign

commerce, which involved the proceeds of specified unlawful activity—to wit, conspiracy to

commit wire fraud and mail fraud, in violation of 18 U.S.C. § 1349, as set forth in Count One

and incorporated here—while knowing that the property involved in the financial transaction

represented the proceeds of some form of unlawful activity and

a.     with the intent to promote the carrying on of specified unlawful activity, in

violation of 18 U.S.C. § 1956(a)(1)(A)(i); and

9

      b.     knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(l)(B)(i).

### Manner and Means of the Money Laundering Conspiracy

It was part of the conspiracy that:

3.     The defendants engaged in financial transactions including wire and bank transfers wherein the proceeds from sales of fraudulently obtained goods were delivered to the defendants and their co-conspirators located inside and outside of the United States, in ways designed to conceal and disguise the nature, source, ownership, and control of the proceeds.

4.     The defendants and their co-conspirators would deposit funds into the bank accounts of other members of the conspiracy to promote the scheme to defraud by providing to the latter funds with which to pay for transportation, storage facilities, and other expenses of the fraud scheme.

### Overt Acts

5.     In furtherance of the conspiracy and to effect its objects, the defendants committed the following overt acts in the District of Maryland and elsewhere:

      a.     On or about October 17, 2016, a member of the conspiracy in California deposited $4,000 in cash into a bank account held by **TROY BARBOUR ("BARBOUR")**.

      b.     On or about October 19, 2016, **NKONGHO** deposited $3,000 in cash at a Bank of America ("BOA") branch in California into **BARBOUR**'s bank account.

      c.     On or about October 25, 2016, **BARBOUR** wired $6,950 from his bank account to **UNAKALU**, located in Nigeria, ostensibly for "family support."

      d.      On or about October 31, 2016, **NKONGHO** sent **UNAKALU** a picture message via WhatsApp showing that **NKONGHO** deposited $8,145 into **Razaq**'s bank account.

      e.      On or about November 5 and 6, 2016, **UNAKALU** directed **NKONGHO** via WhatsApp to provide **ROSS** $1,000 to travel to the East Coast.

      f.      On or about November 14, 2016, **UNAKALU** directed **NKONGHO** via WhatsApp to give **Razaq** $5,000, stating, "Hi honey, I need you to send 5k to Khalid [**Razaq**] first thing this morning....we gave a lot of product that needs to be shipped immediately and Khalid ran out of money...very important."

      g.      On or about November 14, 2016, **UNAKALU** sent **NKONGHO** a picture of **Razaq**'s bank account information via WhatsApp.

      h.      On or about November 14, 2016, **NKONGHO** sent **UNAKALU** a picture of a deposit slip showing that she had deposited $5,000 into **Razaq**'s account.

      i.      On or about November 17, 2016, **UNAKALU** directed **NKONGHO** to provide **ROSS** $2,000 so **ROSS** could rent storage space to receive the stolen flat screen televisions.

      j.      On or about November 28, 2016, **ROSS** deposited $7,500 in cash at a California bank into **Razaq**'s bank account.

      k.      On or about December 2, 2016, **ROSS** deposited $7,000 in cash at a California bank into **Razaq**'s bank account.

      l.      On or about December 13, 2016, **ROSS** wired $2,955 to **UNAKALU**, located in Nigeria, ostensibly for "family support."

      m.      On or about December 30, 2016, from a BOA location in California, **SAUL EADY** deposited $4,860 in cash into **Razaq**'s bank account.

n.      On or about December 30, 2016, from a different BOA location in California, **SAUL EADY** deposited $5,640 in cash into **Razaq**'s bank account.

o.      On or about January 6, 2017, a co-conspirator deposited $4,400 in cash into **ROSS**'s bank account.

p.      On or about January 9, 2017, **ROSS** wired $4,355 to **UNAKALU** in Nigeria.

q.      On or about January 19, 2017, **ROSS** deposited $7,500 in cash into **Razaq**'s bank account.

r.      On or about January 23, 2017, a co-conspirator deposited $9,010 in cash into **ROSS**'s bank account.

s.      On or about January 23, 2017, after receiving $9,010 in cash into his bank account, **ROSS** wired $8,953 from that account to **UNAKALU**, located in Nigeria, ostensibly as "investment income."

t.      Between January 27, 2017, and February 1, 2017, **ROSS** and other co-conspirators in California made cash deposits into **BARBOUR**'s account totaling $10,400 to provide **BARBOUR** funds to pay a Maryland-based moving company to transport flat screen televisions from Virginia to California.

u.      On or about February 7, 2017, a co-conspirator in Nigeria directed **Razaq** via WhatsApp on how to distribute profits from the flat screen television scheme to other co-conspirators.

v.      On or about February 7, 2017, a co-conspirator deposited $8,050 in cash into **NJOKU**'s bank account.

12

w.     On or about February 8, 2017, **NJOKU** wired $8,000 from her bank account to **UNAKALU**, located in Nigeria.

x.     On or about February 20, 2017, **UNAKALU** directed **NKONGHO** to "Give Brandon [**ROSS**] 15.400."

y.     On or about February 21, 2017, a co-conspirator deposited $5,200 in cash into **BARBOUR**'s bank account at a California bank.

z.     On or about February 27, 2017, **BARBOUR** wired $5,155 from his bank account to **UNAKALU**, located in Nigeria, ostensibly for "family support."

aa.    On or about February 27, 2017, **NKONGHO** reported to **UNAKALU** that **NKONGHO** still had $120,290 remaining after sending **UNAKALU** $9,000 for which **UNAKALU** had asked.

bb.    On or about February 27, 2017, **UNAKALU** instructed **NKONGHO** to provide **ROSS** $110,500 on March 1, 2017, so **ROSS** "can get it where it's supposed to be."

cc.    On or about March 1, 2017, **ROSS** provided **Razaq** $108,570 in cash as the latter's share of the proceeds from the scheme to defraud.

dd.    On or about March 13, 2017, **UNAKALU** sent a message to **Razaq** asking if the latter had a bank account that could accept a transfer of $150,000.

18 U.S.C. § 1956(h)

## COUNT THREE
### (Wire Fraud)

The Grand Jury for the District of Maryland further charges that:

1.     Paragraphs 1 through 6 and 8 through 14 of Count One are incorporated here.

2.     On or about September 1, 2016, in the District of Maryland and elsewhere, the defendants,

**PETER UNAKALU,**
**a/k/a "Peter Eromosefe Unuakhalu," and**
**JANET STURMER,**
**a/k/a "Janet Rhame,"**
**a/k/a "Janet Burnett,"**

for the purpose of executing and attempting to execute the scheme to defraud, did cause and attempt to cause to be transmitted by means of wire communication, in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds, that is, the defendants sent and caused to be sent from Nigeria to Victim Company 3 in Maryland an email with an attachment containing a fraudulent purchase order and contract to purchase approximately $3,200,000 in communications equipment from Victim Company 3.

18 U.S.C. § 1343
18 U.S.C. § 2

## COUNT FOUR
### (Mail Fraud)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 6 and 8 through 14 of Count One are incorporated here.

2.      From on or about September 8, 2016, through September 12, 2016, in the District

of Maryland and elsewhere, the defendants,

**PETER UNAKALU,**
**a/k/a "Peter Eromosefe Unuakhalu," and**
**JANET STURMER,**
**a/k/a "Janet Rhame,"**
**a/k/a "Janet Burnett,"**

for the purpose of executing and attempting to execute the scheme to defraud, knowingly caused

to be delivered by mail and by private and commercial interstate carrier according to the

direction thereon the following matter: 949 Apple iPhones from Victim Company 1.

18 U.S.C. § 1341
18 U.S.C. § 2

## COUNT FIVE
### (Aggravated Identity Theft)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 6 and 8 through 14 of Count One are incorporated here.

2.      On or about September 8, 2016, in the District of Maryland and elsewhere, the

defendants,

**PETER UNAKALU,**
**a/k/a "Peter Eromosefe Unuakhalu," and**
**JANET STURMER,**
**a/k/a "Janet Rhame,"**
**a/k/a "Janet Burnett,"**

during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c)—that is,

conspiracy to commit wire fraud and mail fraud, in violation of 18 U.S.C. § 1349, as charged in

Count One and incorporated here; and mail fraud, in violation of 18 U.S.C. § 1341, as charged in

Count Four and incorporated here—knowingly transferred, possessed, and used, without lawful

authority, a means of identification of another person, that is, the name, address, date of birth,

driver's license, and social security number of Individual Victim A.


18 U.S.C. § 1028A
18 U.S.C. § 2

## COUNT SIX
### (Mail Fraud)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 6 and 8 through 14 of Count One are incorporated here.

2.      On or about October 27, 2016, in the District of Maryland and elsewhere, the

defendants,

**PETER UNAKALU,**
**a/k/a "Peter Eromosefe Unuakhalu,"**
**JANET STURMER,**
**a/k/a "Janet Rhame,"**
**a/k/a "Janet Burnett,"**
**EUCHARIA NJOKU,**
**a/k/a "U.K.,"**
**a/k/a "Ukay,"**
**a/k/a "Rita," and**
**BRANDON ROSS,**
**a/k/a "Shaba,"**
**a/k/a "Shaba X,"**

for the purpose of executing and attempting to execute the scheme to defraud, knowingly caused

to be delivered by mail and by private and commercial interstate carrier according to the

direction thereon the following matter: communications equipment owned by Victim Company 3

valued at approximately $3,200,000.

18 U.S.C. § 1341
18 U.S.C. § 2

17

## COUNT SEVEN
### (Interstate Transportation of Stolen Property)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 6 and 8 through 14 of Count One are incorporated here.

2.      On or about February 2, 2017, in the District of Maryland and elsewhere, the

defendants,

**PETER UNAKALU,**
**a/k/a "Peter Eromosefe Unuakhalu,"**
**JANET STURMER,**
**a/k/a "Janet Rhame,"**
**a/k/a "Janet Burnett,"**
**EUCHARIA NJOKU,**
**a/k/a "U.K.,"**
**a/k/a "Ukay,"**
**a/k/a "Rita,"**
**BRANDON ROSS,**
**a/k/a "Shaba,"**
**a/k/a "Shaba X,"**
**SAULINA HELEN EADY, and**
**SAUL EADY,**

did knowingly and willfully transport, transmit, and transfer in interstate and foreign commerce

from Maryland to California stolen goods, wares, and merchandise of the value of $5,000 or

more—that is, approximately 190 LG Electronics flat screen televisions distributed by Victim

Company 2—knowing the same to have been stolen, converted, and taken by fraud.


18 U.S.C. § 2314
18 U.S.C. § 2

## **COUNT EIGHT**
### **(Money Laundering)**

The Grand Jury for the District of Maryland further charges that:

1.     Paragraphs 1 through 6 and 8 through 14 of Count One are incorporated here.

2.     On or about October 17, 2016, in the District of Maryland and elsewhere, the defendant,

### **TROY BARBOUR,**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce—that is, the defendant deposited and caused to be deposited $4,000 in cash at a Bank of America branch in California into Bank of America Account x9296 held by the defendant in Maryland—which in fact involved the proceeds of specified unlawful activity—that is, conspiracy to commit wire fraud and mail fraud, as charged in Count One and incorporated here—knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity and that the transaction was designed in whole and in part to promote the carrying on of specified unlawful activity and to conceal and to disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity.


18 U.S.C. § 1956(a)(1)(A)(i) and (B)(i)
18 U.S.C. § 2

## COUNT NINE
### (Money Laundering)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 6 and 8 through 14 of Count One are incorporated here.

2. On or about October 19, 2016, in the District of Maryland and elsewhere, the defendants,

### EUNICE NKONGHO,
### a/k/a "Eunice Bisong," and
### TROY BARBOUR,

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and

foreign commerce—that is, the defendants deposited and caused to be deposited $3,000 in cash

at a Bank of America branch in California into Bank of America Account x9296 held by

**BARBOUR** in Maryland—which in fact involved the proceeds of specified unlawful activity—

that is, conspiracy to commit wire fraud and mail fraud, as charged in Count One and

incorporated here—knowing that the property involved in the financial transaction represented

the proceeds of some form of unlawful activity and that the transaction was designed in whole

and in part to promote the carrying on of specified unlawful activity and to conceal and to

disguise the nature, location, source, ownership, and control of the proceeds of specified

unlawful activity.

18 U.S.C. § 1956(a)(1)(A)(i) and (B)(i)
18 U.S.C. § 2

20

## COUNT TEN
### (Money Laundering)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 6 and 8 through 14 of Count One are incorporated here.

2.      On or about October 25, 2016, in the District of Maryland and elsewhere, the defendants,

### PETER UNAKALU,
### a/k/a "Peter Eromosefe Unuakhalu," and
### TROY BARBOUR,

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and

foreign commerce—that is, the defendants wired and caused to be wired $6,950 from Bank of

America Account x9296 held by **BARBOUR** in Maryland to Diamond Bank PLC Account

x2744 held by **UNAKALU** in Nigeria—which in fact involved the proceeds of specified

unlawful activity—that is, conspiracy to commit wire fraud and mail fraud, as charged in Count

One and incorporated here—knowing that the property involved in the financial transaction

represented the proceeds of some form of unlawful activity and that the transaction was designed

in whole and in part to promote the carrying on of specified unlawful activity and to conceal and

to disguise the nature, location, source, ownership, and control of the proceeds of specified

unlawful activity.

18 U.S.C. § 1956(a)(1)(A)(i) and (B)(i)
18 U.S.C. § 2

## COUNT ELEVEN
### (Money Laundering)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 6 and 8 through 14 of Count One are incorporated here.

2.      On or about January 27, 2017, in the District of Maryland and elsewhere, the defendant,

### TROY BARBOUR,

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce—that is, the defendant deposited and caused to be deposited $4,000 in cash at a Bank of America branch in California into Bank of America Account x9296 held by the defendant in Maryland—which in fact involved the proceeds of specified unlawful activity—that is, conspiracy to commit wire fraud and mail fraud, as charged in Count One and incorporated here—knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity and that the transaction was designed in whole and in part to promote the carrying on of specified unlawful activity and to conceal and to disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity.


18 U.S.C. § 1956(a)(1)(A)(i) and (B)(i)
18 U.S.C. § 2

## COUNT TWELVE
### (Money Laundering)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 6 and 8 through 14 of Count One are incorporated here.

2.      On or about January 27, 2017, in the District of Maryland and elsewhere, the defendants,

**PETER UNAKALU,**
**a/k/a "Peter Eromosefe Unuakhalu,"**
**BRANDON ROSS,**
**a/k/a "Shaba,"**
**a/k/a "Shaba X,"**
**EUNICE NKONGHO,**
**a/k/a "Eunice Bisong," and**
**TROY BARBOUR,**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce—that is, the defendants deposited and caused to be deposited $3,300 in cash at a Bank of America branch in California into the Bank of America Account x9296 registered in Maryland—which in fact involved the proceeds of specified unlawful activity—that is, conspiracy to commit wire fraud and mail fraud, as charged in Count One and incorporated here—knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity and that the transaction was designed in whole and in part to promote the carrying on of specified unlawful activity and to conceal and to disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity.


18 U.S.C. § 1956(a)(1)(A)(i) and (B)(i)
18 U.S.C. § 2

## COUNT THIRTEEN
### (Money Laundering)

The Grand Jury for the District of Maryland further charges that:

1.    Paragraphs 1 through 6 and 8 through 14 of Count One are incorporated here.

2.    On or about January 27, 2017, in the District of Maryland and elsewhere, the defendant,

### TROY BARBOUR,

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce—that is, the defendant deposited and caused to be deposited $2,000 in cash at a Bank of America branch in California into Bank of America Account x9296 held by the defendant in Maryland—which in fact involved the proceeds of specified unlawful activity—that is, conspiracy to commit wire fraud and mail fraud, as charged in Count One and incorporated here—knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity and that the transaction was designed in whole and in part to promote the carrying on of specified unlawful activity and to conceal and to disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity.

18 U.S.C. § 1956(a)(1)(A)(i) and (B)(i)
18 U.S.C. § 2

## COUNT FOURTEEN
### (Money Laundering)

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 6 and 8 through 14 of Count One are incorporated here.

2.      On or about February 1, 2017, in the District of Maryland and elsewhere, the defendant,

### TROY BARBOUR,

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce—that is, the defendant deposited and caused to be deposited $1,100 in cash at a Bank of America branch in Virginia into Bank of America Account x9296 held by the defendant in Maryland —which in fact involved the proceeds of specified unlawful activity— that is, conspiracy to commit wire fraud and mail fraud, as charged in Count One and incorporated here—knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity and that the transaction was designed in whole and in part to promote the carrying on of specified unlawful activity and to conceal and to disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity.

18 U.S.C. § 1956(a)(1)(A)(i) and (B)(i)
18 U.S.C. § 2

## COUNT FIFTEEN
**(Money Laundering)**

The Grand Jury for the District of Maryland further charges that:

1.      Paragraphs 1 through 6 and 8 through 14 of Count One are incorporated here.

2.      On or about February 21, 2017, in the District of Maryland and elsewhere, the defendant,

## TROY BARBOUR,

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce—that is, the defendant deposited and caused to be deposited $5,200 in cash at a Bank of America branch in California into Bank of America Account x9296 held by the defendant in Maryland—which in fact involved the proceeds of specified unlawful activity—that is, conspiracy to commit wire fraud and mail fraud, as charged in Count One and incorporated here—knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity and that the transaction was designed in whole and in part to promote the carrying on of specified unlawful activity and to conceal and to disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity.


18 U.S.C. § 1956(a)(1)(A)(i) and (B)(i)
18 U.S.C. § 2

26

## COUNT SIXTEEN
### (Money Laundering)

The Grand Jury for the District of Maryland further charges that:

1.     Paragraphs 1 through 6 and 8 through 14 of Count One are incorporated here.

2.     On or about February 27, 2017, in the District of Maryland and elsewhere, the defendants,

### PETER UNAKALU,
### a/k/a "Peter Eromosefe Unuakhalu," and
### TROY BARBOUR,

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce—that is, the defendants wired and caused to be wired $5,155 from Bank of America Account x9296 held by **BARBOUR** in Maryland to Diamond Bank PLC Account x2744 held by **UNAKALU** in Nigeria—which in fact involved the proceeds of specified unlawful activity—that is, conspiracy to commit wire fraud and mail fraud, as charged in Count One and incorporated here—knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity and that the transaction was designed in whole and in part to promote the carrying on of specified unlawful activity and to conceal and to disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity.

18 U.S.C. § 1956(a)(1)(A)(i) and (B)(i)
18 U.S.C. § 2

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to Fed. R. Crim. P.32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendants' convictions under Counts One through Four and Six through Sixteen of this Superseding Indictment.

### Fraud Forfeiture

2.      Upon conviction of the offenses charged in Counts One, Three, Four, Six, and Seven, the defendants,

**PETER UNAKALU,**
**a/k/a "Peter Eromosefe Unuakhalu,"**
**JANET STURMER,**
**a/k/a "Janet Rhame,"**
**a/k/a "Janet Burnett"**
**EUCHARIA NJOKU,**
**a/k/a "U.K.,"**
**a/k/a "Ukay,"**
**a/k/a "Rita,"**
**BRANDON ROSS,**
**a/k/a "Shaba,"**
**a/k/a "Shaba X,"**
**SAULINA HELEN EADY,**
**SAUL EADY, and**
**EUNICE NKONGHO,**
**a/k/a "Eunice Bisong,"**

shall forfeit to the United States any and all property, real or personal, which constitutes or is derived from proceeds traceable to such violations, and all interest and proceeds traceable thereto.

28

## Money Laundering Forfeiture

3.      Upon conviction of the offenses charged in Counts Two and Eight through

Sixteen, the defendants,

**PETER UNAKALU,**
**a/k/a "Peter Eromosefe Unuakhalu,"**
**EUCHARIA NJOKU,**
**a/k/a "U.K.,"**
**a/k/a "Ukay,"**
**a/k/a "Rita,"**
**BRANDON ROSS,**
**a/k/a "Shaba,"**
**a/k/a "Shaba X,"**
**SAUL EADY,**
**EUNICE NKONGHO,**
**a/k/a "Eunice Bisong," and**
**TROY BARBOUR,**

shall forfeit to the United States of America any property, real or personal, involved in such

offense, and any property traceable to such property.

4.      The property to be forfeited includes, but is not limited to, the following:

a.      A sum of money equal to the value of any property involved in the money

laundering offenses, which sum shall be at least $7,728,596;

b.      All property constituting the subject matter of the money laundering

offenses; and

c.      All property used to commit or to facilitate the commission of the money

laundering offenses.

## Substitute Assets

5.      If, as a result of any act or omission of the defendants, any such property subject

to forfeiture:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third person;

29

    c.      has been placed beyond the jurisdiction of the Court;

    d.      has been substantially diminished in value; or

    e.      has been commingled with other property which cannot be subdivided

            without difficulty,

the United States of America, pursuant to 21 U.S.C. § 853(p), shall be entitled to forfeiture of

substitute property.

18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1)
21 U.S.C. § 853
28 U.S.C. § 2461(c)

*Robert K. Hur / SRS*

Robert K. Hur
United States Attorney

A TRUE BILL:

# SIGNATURE REDACTED

Foreperson

Date: August 25 2019