

## ATTACHMENT A
## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

At all times relevant, the email address "Daniel.Drunz@navy-mil.us" was a registered Yahoo, Inc., email address and was not an email address on the official United States Navy email domain. Co-conspirators of **EUCHARIA NJOKU**, a/k/a "U.K.," a/k/a "Ukay," a/k/a "Rita" ("**NKOJU**"), established and used this email address, authentic forms, titles, addresses, and other indicia in order to pose as United States government contracting agents. Parts of this fraud scheme, including but not limited to email and telephone correspondence and counterfeit form creation, were conducted from outside the United States, including but not limited to Nigeria. **NJOKU**'s co-conspirators convinced United States companies (Victim Company 1, 2, and 3, collectively referred to as the "Victim Companies") that the conspirators were authorized to make purchase agreements on behalf of the United States government. As such, the Victim Companies, without prior payment, shipped to **NJOKU**'s co-conspirators certain merchandise, including specialized communications equipment, cellular telephones, computers, and large screen televisions. **NJOKU** and her co-conspirators sold or otherwise disposed of the fraudulently obtained property without rendering agreed payment to Victim Companies.

### The Victim Companies

Victim Company 1 was a company headquartered in the State of Washington that provided wireless voice and data services. Victim Company 2 was a wholesale audio-video distributor and manufacturer's representative located in the Commonwealth of Virginia. Victim Company 3 was a cleared United States defense contractor headquartered in the State of Maryland that designed, manufactured, and marketed communications equipment. At least one victim company suffered substantial financial hardship, including but not limited to the postponement of employee retirement plans or termination of employment, as a result of the offense.

### The Wire and Mail Fraud Conspiracy

Beginning at least in or about October 2015, and continuing until at least in or about March 2017, in the District of Maryland and elsewhere, **NJOKU** did knowingly conspire with **Peter Unakalu**, **Khalid Razaq** ("**Razaq**"), **Janet Sturmer** ("**Sturmer**"), **Brandon Ross** ("**Ross**"), **Saulina Eady** ("**Saulina Eady**"), **Saul Eady**, **Eunice Nkongho** ("**Nkongho**"), and others to commit wire fraud, that is, to devise and intend to devise a scheme and artifice to defraud the Victim Companies, and for obtaining money and property from the Victim Companies by means of false and fraudulent pretenses, representations, and promises ("the scheme to defraud"), and, for the purpose of executing and attempting to execute the scheme to defraud, to cause to be transmitted by means of wire communication, in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343; and to commit mail fraud, that is, to devise and intend to devise a scheme and artifice to defraud the Victim Companies, and for obtaining money and property from the Victim Companies by means of false and fraudulent pretenses,

10

representations, and promises, and, for the purpose of executing and attempting to execute the scheme to defraud, to cause to be placed in any post office or authorized depository for mail matter, any matter and thing whatever to be sent or delivered by the Postal Service, and to deposit and cause to be deposited any matter and thing whatever to be sent or delivered by any private or commercial interstate carrier, and to take and receive therefrom, any such matter and thing, and to knowingly cause to be delivered by mail and such carrier according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed.

As part of the West Coast operation of this criminal organization, **NJOKU**, operating under the nickname "Rita," received the fraudulently obtained property shipped from her co-conspirators on both the East Coast (**Razaq** and **Sturmer**) and the West Coast (**Ross**) and was in charge of facilitating the movement and resale of the stolen property (iPhones, iPads, and LG large screen televisions) to various buyers. **Unakalu**, the architect of this scheme, resided outside the United States (likely in Nigeria). **Unakalu** recruited **NJOKU** into the fraud scheme. **NJOKU** communicated directly with **Unakalu** and **Nkongho** via WhatsApp, an encrypted Internet-based chat application. In these communications, **NJOKU** spoke with **Unakalu** numerous times during the duration of this fraud scheme. As evidenced from the forensic analysis of **Nkongho**'s cellular telephones, **Unakalu** communicated with **NJOKU** multiple times, often using **Nkongho** to relay messages between them. **NJOKU** met with buyers located by **Unakalu**, and also personally located and negotiated the resale of the stolen property to at least one buyer in the Los Angeles, California, area.

For the resale of the iPhones and iPads in or about September 2016, **NJOKU** received the stolen items from her co-conspirators and personally delivered the stolen items to the buyers. Specifically, in September 2016, at the direction of **Unakalu**, **NJOKU** received nineteen brown boxes of iPhones and iPads from **Razaq** and **Ross** in a parking lot of a retail establishment in California. Again, at the direction of **Unakalu**, **NJOKU** met the buyers, provided them the stolen Apple items, and received payment in cash. **Unakalu** directed **NJOKU** to hold the money and meet with **Razaq** the next day because **Razaq** had more products to sell. The following day, **NJOKU** met **Ross** and **Razaq** at a hotel near Los Angeles International Airport. **Ross** provided **NJOKU** with the keys to a U-Haul cargo van filled with boxes of stolen iPhones and iPads. **NJOKU** drove the cargo van to the buyers, provided the buyers the stolen items, and received payment in cash. **NJOKU** provided some of the proceeds to **Razaq**. During these resales, approximately $1.1 million in stolen iPhones and iPads were resold to various buyers in the Los Angeles area.

In or about November 2016, **Unakalu** contacted **NJOKU** via WhatsApp to discuss selling televisions in the Los Angeles, California area. Over WhatsApp, **Unakalu** sent **NJOKU** pictures of and prices for the televisions. When a resale transaction of the LG televisions occurred, at first, **NJOKU** met the buyer at the storage facility where the stolen items were being stored pending resale and directed **Ross** to be there to provide access to the storage unit. **NJOKU** met the buyer, the buyer received the stolen items, and **NJOKU** received the cash payment. During subsequent resales, **NJOKU** directed the buyers to the storage facility, **Ross** met the buyers to turn over the stolen items, and **NJOKU** later met the buyers to receive payment in cash. On two occasions, while **NJOKU** was out of the country, another individual operating at the instruction of **NJOKU** with the coordination of **Ross** facilitated the resale and received payment in cash. During these resales, approximately $3,185,466.80 in stolen televisions were resold to various buyers in the Los Angeles area.

NJOKU received the cash payments from the buyers at the direction of **Unakalu** and provided the fraud proceeds to **Razaq** and **Ross**. **NJOKU** received a portion of the proceeds totaling at least $40,000 for her participation and her trusted role in the fraud conspiracy.

Based on search warrant results, surveillance footage, business records from the Victim Companies, and information from others, the loss foreseeable to **NJOKU**, and within the scope and in furtherance of the conspiracy, was more than $3,500,000 but not more than $9,500,000, based on the value of the goods fraudulently obtained from the Victim Companies.

SO STIPULATED:

_____
Jennifer R. Sykes
Joseph R. Baldwin
Assistant United States Attorneys

_____
Eucharia Njoku
Defendant

_____
Paul R. Kramer
Counsel for Defendant